## IRA DAY *v.* JOAB SEELY, ELISHA P. JEWETT, H. N. BAYLIES AND CHAUNCEY L. KNAPP.

The widow of a mortgagor is directly interested to defeat the mortgage; and she is, therefore, an incompetent witness for the defendants, in a bill brought to foreclose the mortgage, to prove that the mortgagor was insane at the time he executed the mortgage.

A court of chancery will not set aside a conveyance, which is perfectly fair, and when no undue advantage has been taken, provided the grantor had, at the time of executing the conveyance, sufficient understanding to know the nature and consequences of his act.

The burden of proof, in such case, is upon the party who seeks to avoid the conveyance.

Where it appeared that a mortgagor, at the time he executed the note and mortgage, comprehended well what he was doing and the consequences of his acts, the court of chancery held the mortgage valid, although it appeared quite probable that there had been times, previous to the execution of the mortgage, when he might not have had sufficient capacity,—the disease under which he suffered, and of which he ultimately died, being one of the brain, and one which would not, from its nature, be at all times uniform in its influence upon the understanding.

APPEAL from the court of chancery. The bill was brought to foreclose a mortgage of certain premises in Montpelier, executed by one John Parker, on the 21st of September, 1836, to secure a note for $469.64, signed by the mortgagor and bearing date September 12, 1836. The mortgagor died in December, 1837; and the defendants claimed title to the mortgaged premises under an adminis-

Day *v.* Seely et al.

trator's sale, made, under an order from the probate court, for the payment of the debts due from the said Parker at the time of decease.

The defendants, in their answer, alleged that the said Parker, at the time he executed the note, and also at the time he executed the mortgage, was insane, and wholly incapable, by reason of his insanity and want of capacity, of making any binding contract, or of giving any valid note, or of executing a valid mortgage deed.

Among the witnesses, examined on the part of the defendants, was Hannah Parker, the widow of the mortgagor, whose testimony tended to show that her husband was in fact insane, at the time the note and mortgage were executed. A motion was made to suppress her testimony, on the ground of interest. The substance of the testimony in the case, aside from that of the widow, is sufficiently detailed in the opinion of the court.

The court of chancery found the facts alleged in the answer to be true, and dismissed the orator's bill; from which decision the orator appealed.

———— for orator.

The evidence does not show that Parker was *insane.   Towart* v. *Sellis,* 5 Dowl. P. C. 231.  1 Pow. on Mort. 58, note *a.*

*A. Spaulding* for defendant.

1. It would seem from the testimony, if believed, that no one could doubt as to the insanity of Parker at the time he made the contract in question.

2. The orator objected to the testimony of Hannah Parker, because she was the widow of the mortgagor. It is contended that it does not necessarily follow that Mrs. Parker had any interest in the premises. She might have had jointure, or pecuniary provision, made for her by her husband prior to his death, or an agreement, made at the time of marriage, that she should have no dower, or no interest in the estate of her husband. The simple fact, that she is the widow, is not *prima facie* evidence of interest. The question is left in doubt,—and therefore the witness should testify. Again, it is shown in the bill and answer that these premises were sold by order of the probate court. This could not have been done

without her consent. The presumption is, that courts act legally, and, as nothing is shown to the contrary in this case, it is to be presumed that she had other provision made for her, and that she waived her right of dower in these premises. Again, it does not appear but that Parker had other real estate, which was set off to the widow for her dower; it was not shown that she ever claimed dower in this property, and, from the lapse of time since the sale, it is to be presumed that she acquiesced in the sale. The records of the probate court settled the question, as to her interest.

The opinion of the court was delivered by

BENNETT, J. The object of this bill is to foreclose a mortgage, executed by John Parker in his life time, bearing date the 21st of September, 1836. The defendants claim title to the mortgaged premises under an administrator's sale, for the payment of the debts owing by Mr. Parker, at his decease. The right of the orator to a decree of foreclosure is resisted, upon the ground that Parker was incompetent to execute the mortgage.

The first question presented is, as to the competency of the widow of the intestate, as a witness in behalf of the defendants. If the mortgage is sustained, the widow is only entitled to dower in the equity of redemption. If the mortgage is set aside, the widow will then come in for her dower in the entire land, irrespective of the payment of the debts of the intestate. She is, then, manifestly interested in the result of this suit. Her testimony, then, must be suppressed, and the cause decided upon the other evidence in the case.

The rule is well settled, that chancery will not set aside a conveyance, which is perfectly fair, and when no undue advantage has been taken, provided the grantor had sufficient understanding to know the nature and consequences of his act; and the burden of proof, in such case, is upon the party who seeks to avoid the conveyance. We think, from a careful inspection of the whole evidence, no such degree of insanity is made out, as should render, either the note, or mortgage, absolutely void. The evidence is quite positive, that, when he executed the note and mortgage, the mortgagor did well comprehend what he was doing, and the consequences of his acts,—though it is quite probable, that there had

been times, previously, when he might not have had sufficient capacity. We learn, that the disease, which finally prostrated the mental powers of Mr. Parker, was what is called a continuous disorganization of the brain itself. This, especially in its early stages, would not at all times be uniform in its influence upon the understanding; and even in the summer of 1837 we learn that there was a great difference of opinion among the friends of Mr. Parker, as to whether he was then a fit subject to warrant the appointment of a guardian.

It is shown positively by the orator, that this was a fair transaction on his part, and that the mortgage was given to secure a *bona fide* debt, and in pursuance of a previous agreement, made at a time, when it can hardly be claimed that Parker was incompetent. There was no oppression in the orator, and no unconscionable advantage taken of the mental weakness of the mortgagor.

On the whole, we think the decree of the chancellor should be reversed, and that the cause should be remanded to him, with instructions to decree a foreclosure in the usual form, upon the non-payment of the sum due on the mortgage, and costs, at such time as the chancellor shall order.